

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2007

# Livingston v. McKees Rocks

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4287

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Livingston v. McKees Rocks" (2007). *2007 Decisions.* Paper 1528.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1528

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-4287

—————

BRANDON LIVINGSTON, a minor by his parents and guardians,
Mark Livingston & Lorraine Livingston; KAZMARAE LIVINGSTON,
a minor, by and through her parents and guardians,
Mark Livingston and Lorraine Livingston; MARK LIVINGSTON,
an individual; LORRAINE LIVINGSTON, an individual;
RENE SURGEST, an individual; WANDA JONES-DIXON, an individual;
ANGELA KIRKLAND, a minor by her parents and natural guardians
Sally Kirkland and Bobby Kirkland, Sr.

v.

*BOROUGH OF MCKEES ROCKS; OFFICER SHAWN BARGER;
MCKEES ROCKS POLICE DEPARTMENT; OFFICER DOLPHO;
BOROUGH OF MCKEES ROCKS SCHOOL DISTRICT;

Brandon Livingston, a minor by his parents and guardians,
Mark Livingston and Lorraine Livingston; Kazmarae
Livingston, a minor by and through her parents and guardians,
Mark Livingston and Lorraine Livingston; Mark Livingston;
Lorraine Livingston; Rene Surgest; Wanda Dixon,

Appellants

*(Amended pursuant to the Court's Order dated 04/11/06)

—————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00840)
District Judge: Hon. Arthur J. Schwab

BEFORE: SMITH, FISHER and COWEN, <u>Circuit Judges</u>

(Filed: March 6, 2007)

OPINION

COWEN, <u>Circuit Judge</u>.

Appellants Brandon Livingston, Mark Livingston, Lorraine Livingston, Kazmarae Livingston (the "Livingstons"), Wanda Jones-Dixon, and Rene Surgest brought this action against appellees the Borough of McKees Rocks (the "Borough"), Officer Shawn Barger, the McKees Rocks Police Department, and K-9 Officer Dolpho, presenting a variety of civil rights claims. On August 17, 2005, the District Court granted appellees' motions for summary judgment as to all federal claims and claims arising under the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. §§ 1421-1428, while dismissing appellants' other state claims without prejudice. Appellants now challenge that order. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

---

[1] We review a district court's order granting a motion for summary judgment under a plenary standard, applying the same test employed by the District Court under Federal Rule of Civil Procedure 56(c). *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 679 (3d Cir. 2003). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

The Livingstons' claims concern an unfortunate June 7, 2000 incident in which Brandon Livingston was attacked by a McKees Rocks K-9 police dog (Dolpho) while the K-9 was ostensibly under the control of Officer Barger. After the episode, Lorraine Livingston, Brandon's mother, made comments on various media outlets criticizing the McKees Rocks police department for allowing the attack to occur. Thereafter, according to the Livingstons, the police began targeting them; more specifically: (1) the Livingstons received a notice warning them to cut their grass, even though their neighbors, whose grass was higher, did not; (2) the police department stopped their son, Chai, for running a stop sign and called him "boy"; and (3) the police generally harassed the family by driving through their neighborhood and watching them. Ultimately, the Livingstons brought state-law claims regarding Brandon's injuries and 42 U.S.C. § 1983 claims alleging First Amendment retaliation, racial profiling, and failure to train.

Initially, we agree with the District Court that Dolpho, as a dog, and the police department, as an inseparable component of the Borough, *see Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 367 (E.D. Pa. 2002), are improper parties to this lawsuit.[2] We also conclude that the District

_____

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we view the facts in the light most favorable to the non-moving party. Further, we may affirm for any reason supported by the record. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000).

   [2] This also applies to claims brought by appellants Jones-Dixon and Surgest.

Court did not abuse its discretion by dismissing Kazmarae Livingston's claims for failure to prosecute. Given that Kazmarae has not shown up for depositions, has failed to cooperate with discovery, has been unavailable for medical evaluations, and that her whereabouts are currently unknown, we are convinced that the District Court's decision is in accordance with *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

The Livingstons' constitutional claims fare no better. To establish a First Amendment retaliation claim, the Livingstons must show: "(1) that [they] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). Even assuming the first two prongs are met, this claim cannot succeed because the Livingstons have failed to present any evidence showing that their protected speech (critical statements made to the media) was the cause of the police officers' conduct. The only evidence supporting causation is the fact that the adverse actions followed the speech; however, the temporal proximity between the two must be "unusually suggestive" before we will infer a causal link. *Id.* Here, the Livingstons have failed to provide a precise chronology of events; no reasonable jury could infer causation based solely on such a vague temporal connection.

The Livingstons next challenge the District Court's grant of summary judgment as to their racial profiling claim. In order to make out a profiling claim, the Livingstons

4

must establish that the actions of the officers "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). This claim suffers from two fatal shortcomings. First, the Livingstons lack standing to bring claims resting on the legal rights of third parties, *see Powers v. Ohio*, 499 U.S. 400, 410 (1991), and the bulk of their racial profiling allegations concern third-party injuries. Second, to prove discriminatory effect, the Livingstons were required to present evidence that similarly situated members of an unprotected class were not subjected to the same adverse treatment, *Bradley*, 299 F.3d at 206, which they have not even attempted to do. Thus, we affirm the District Court's order granting summary judgment to appellees on this claim.

Finally, the Livingstons challenge the judgment on their failure-to-train claim concerning Dolpho and Officer Barger. "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). The Livingstons have failed to identify the specific training that they believe should have been offered; indeed, the only evidence in the record is that Barger and Dolpho were extensively trained and that Dolpho passed certification tests each year. The fact that Dolpho attacked Brandon does not lead ineluctably to the conclusion that Barger and Dolpho were

inadequately trained. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). Thus, we agree with the District Court that the Livingstons failed to present evidence that would allow a reasonable jury to conclude that the injuries to Brandon were caused by the Borough's failure to provide adequate training.

Given that we conclude that the District Court correctly granted summary judgment to appellees on all of the Livingstons' federal claims, we also rule that it was appropriate for the Court to decline to exercise supplemental jurisdiction over the Livingstons' state claims.

## II.

Wanda Jones-Dixon, an African-American woman who during the time relevant to this lawsuit was a Borough councilwoman, appeals the District Court's decision to grant summary judgment to appellee Borough on her 42 U.S.C. § 1983 claims alleging racial harassment and First Amendment retaliation and her claim under the Pennsylvania Whistleblower Law. Jones-Dixon's claims are based on a variety of mistreatment she claims to have suffered at the hands of Borough employees, including her: receiving death threats as a result of her complaints about illegal Borough dumping procedures in 1996; being called racial epithets because she attempted to commission a study of racial profiling in 2000; being threatened for attempting to challenge the conduct of a police

officer in 1994; and receiving threatening and hang-up phone calls and being warned to shut up by Borough Police Officer Conners in 2002 immediately after blasting the Borough for allowing Dolpho to attack Brandon Livingston.

The District Court was correct to conclude that the majority of Jones-Dixon's claims are time-barred under both § 1983 and the Pennsylvania Whistleblower Law. In Pennsylvania, § 1983 actions are subject to a two-year statute of limitations, *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3rd Cir. 1998); the Whistleblower Law has a statute of limitations of 180 days, 43 Pa. Cons. Stat. § 1424(a). Jones-Dixon filed this lawsuit on June 7, 2004, and accordingly, § 1983's statute of limitations bars any claims that accrued before June 7, 2002, and the Whistleblower Law's statute of limitations bars any claims that accrued before December 10, 2003. Almost all of the alleged retaliatory conduct occurred before June 7, 2002, let alone December 10, 2003. Thus, all of Jones-Dixon's Whistleblower Law claims are time-barred, and all of her § 1983 claims are time-barred except those alleging retaliation for her outspoken criticism of the Borough concerning the Dolpho affair.[3]

Even Jones-Dixon's timely retaliation claim cannot provide her with relief. She has sued only the Borough, and when a suit is based on § 1983, a municipality cannot be

---

[3] Jones-Dixon argues that none of these claims should be time-barred because they represent a continuing violation. However, we have explained that "causes of action that can be brought individually expire with the applicable limitations period," *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006), and each of the challenged incidents was individually actionable as a First Amendment retaliation claim when it occurred.

liable under a theory of *respondeat superior*; rather, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). Here, Jones-Dixon stated that she did not know who was making the threatening phone calls, and presented no evidence that Officer Conners' belligerent conduct was part of the Borough's operating procedure or ordered by a Borough decisionmaker. Thus, no reasonable juror could conclude that the mistreatment Jones-Dixon suffered was the result of a Borough policy, and we affirm the District Court's judgment against Jones-Dixon.

III.

Rene Surgest, an African-American woman who was a dispatcher at the Borough's police department, also appeals the District Court's disposition of her claims. She brought claims against the Borough under the Pennsylvania Whistleblower Law and 42 U.S.C. § 1983, alleging that she was racially harassed at work and that she was discharged from her position in retaliation for reporting unlawful activities of the Borough.

As noted above, § 1983 claims have a two-year limitations period and Whistleblower Law claims have a 180-day limitations period. Because Surgest filed her complaint on June 7, 2004, any § 1983 claims that accrued before June 7, 2002 and any Whistleblower Law claims that accrued before December 10, 2003 are time-barred. This

includes Surgest's retaliation claim concerning the workers' television being confiscated, which occurred sometime before 2000, and her retaliation claim concerning a dispute about her sick leave, which occurred in 2001.

Surgest's other retaliation claim alleges that she was discharged from her job because she complained to the FBI about the police force's racial profiling, committing civil rights abuses, and maintaining a hostile work environment. The analysis under § 1983 and the Whistleblower Law is similar. A public employee's claim of First Amendment retaliation is subject to a three-step test: (1) "the employee must show that the activity is in fact protected"; (2) "the employee must show that the protected activity was a substantial factor in the alleged retaliatory action"; and (3) "the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (internal quotation marks, citations omitted). As relevant to this case, the Whistleblower Law provides that "It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." 43 Pa. Cons. Stat. § 1424(c). Here, the District Court correctly concluded that Surgest has failed to present sufficient evidence for a reasonable juror to find in her favor under either statute. The Borough has presented evidence that it discharged not only Surgest, but all of its dispatchers because it joined the county-wide 911 emergency-response

9

system.  Surgest has failed to proffer any evidence challenging that explanation; indeed, she stated that the Borough was "well within [its] rights to eliminate that job."  Thus, we affirm the District Court's grant of summary judgment against Surgest's only non-time-barred retaliation claim.[4]

## IV.

For the foregoing reasons, the judgment of the District Court entered on August 17, 2005, will be affirmed

---

[4] The filings are unclear as to whether Surgest, by claiming that the Borough has shown a pattern and practice of racial harassment, aimed to present a hostile-work-environment claim, or whether, consistent with all appellants' propensities, she was complaining about injuries to third parties that she has no standing to challenge.  Regardless, the ambiguity is of no moment, because no reasonable jury could conclude that Surgest was subjected to a hostile work environment because of her race.  In order to prove the existence of a hostile work environment, Surgest must show that she suffered "severe or pervasive" discrimination because of her race.  *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).  The only evidence of racial animus Surgest presented is that officers directed racial epithets to prisoners (not to Surgest or other employees), and that she once stumbled upon a sound clip in an officer's computer from the movie *Blazing Saddles* that contained an epithet.  These allegations are wholly insufficient to demonstrate a hostile work environment.  *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005).  Even accepting that each incident of (non-time-barred) facially neutral mistreatment that Surgest complained of was also racially motivated, a reasonable jury could not have found those isolated incidents of harassment were severe or pervasive.  *Cf. Cardenas v. Massey*, 269 F.3d 251, 262 (3d Cir. 2001).