NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0651n.06

No. 07-6514

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Sep 21, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GEORGE LIKAS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

---

**Before: MARTIN and GUY, Circuit Judges; and CARR, District Judge.**[*]

**JAMES G. CARR, DISTRICT JUDGE**. In this action under the Employee Retirement Income Security Act [ERISA], 29 U.S.C. § § 1001 et seq., plaintiff George Likas claims that defendant Life Insurance Company of North America [LINA] wrongfully terminated his long-term disability [LTD] benefits. The U.S. District Court for the Middle District of Tennessee initially granted defendant LINA's motion for judgment on the Administrative Record, but this Court remanded this matter to the District Court for clarification of the materials reviewed by Dr. Scott G. Cutler, one of the consulting physicians and "for such further proceedings are appropriate." *Likas*

---

[*]The Honorable James G. Carr, Chief Judge of the Northen District of Ohio, sitting by designation.

1

*v. Life Insurance Company of North America,* 2007 WL 73867, at \*7 (6th Cir. 2007). On remand, the District Court again granted judgment on the Administrative Record to the defendant without further proceedings. *Likas v. Life Insurance Company of North America,* 2007 WL 4480706, at \*5 (M.D. Tenn. 2007). The District Court also denied plaintiff's motion to remand the matter to LINA for reconsideration of the merits. *Id.* at \*2. At issue is plaintiff's appeal from the District Court's opinion on remand.

## Background

Plaintiff was a Branch Manager for ABM Industries at its Nashville, Tennessee facility. The Branch Manager position required frequent sitting and standing and occasional walking and climbing. Plaintiff was a member of ABM's group LTD policy [the Policy], administered by LINA.

Under the Policy, an employee is disabled if, due to injury or sickness, the employee is "unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings" and, after 24 months the employee is "unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education or training" or cannot earn more than 80% of the employee's Indexed Covered Earnings "solely due to Injury or Sickness." (J.A. at 461).

To receive benefits, an employee must prove a disability and be continuously disabled for 90 days. Employees must provide ongoing proof of disability to continue to receive benefits.

Plaintiff's medical record documents muscle and joint plain, fatiguability, myofascial pain syndrome, lumbar spine arthritis, chronic pain syndrome, cervical post-laminectomy pain syndrome,

cervical rediculopathy, depression, and anxiety. Plaintiff underwent two surgeries to reduce his pain. Several of plaintiff's doctors have been unable to determine the cause of his pain.

Plaintiff initially claimed disability benefits on January 4, 2000. LINA approved his claim for short-term benefit on January 11, 2000, and for LTD benefits on April 3, 2000. Plaintiff returned to ABM on a part-time, trial basis from July to August, 2000, but pain prevented him from continuing work.

On October 27, 2001, LINA determined that plaintiff could return to his regular occupation and suspended plaintiff's LTD benefits. On November 5, 2001, LINA sent a letter to plaintiff stating the reasons for denying benefits. The letter states that LINA based its opinions on the evaluations of plaintiff's physicians, Dr. Elalayli, Dr. Schoettle, Dr. Beuter, and Dr. El-Said. According to the letter, Dr. Beuter's office notes from December 26, 2000, to February 9, 2001, revealed that Likas had a "history of chronic pain syndrome without specific diagnosis," and that he referred Likas to the Vanderbilt Stallworth Pain Management Clinic. (J.A. 533.) The letter also referenced an August 21, 2001, statement by Dr. Elalayli that he did not "see any physical limitation keeping [Likas] from work." (J.A. 534). Dr. El-Said told LINA that he "found no neurologic cause for [Likas's] symptoms" but noted that Likas was "being treated for chronic pain at the pain clinic." *Id.* Dr. Schoettle submitted a Physical Ability Assessment form to LINA, dated October 11, 2001, indicating that Likas was "capable of performing full time work in the sedentary-light work classifications." *Id.* Because, LINA stated, Likas's job was considered sedentary by the Dictionary of Occupational Titles, Likas could perform "the physical requirements of [his] occupation." *Id.* LINA terminated Likas's benefits as of the end of October. The letter informed Likas of his right to appeal, which he exercised on January 2, 2002.

3

In considering Likas's appeal, LINA, acting through its sister company Intracorp, secured Dr. Cutler, a neurosurgeon, to review Likas's medical file. On May 8, 2002, Dr. Cutler concluded that no medical documentation supported Likas's inability to work light duty positions after October 28, 2001, and that no demonstrated condition prevented Likas from working full-time in a sedentary position as of October 28, 2001. On June 19, 2002, LINA upheld its decision to terminate Likas's benefits.

Likas filed suit against LINA on March 4, 2003, and LINA removed the case to U.S. District Court on April 10, 2003. On April 2, 2004, the District Court denied Likas's motion to conduct discovery, alleging that LINA was operating under a conflict of interest. Likas also alleged that LINA had withheld portions of the Administrative Record from discovery. The Magistrate Judge considered and denied Likas's motion to compel production of the alleged missing portions, concluding that LINA submitted the complete Administrative Record. On November 29, 2004, Likas filed a motion to remand the case to LINA. The District Court denied this motion, concluding that LINA's procedures substantially complied with ERISA's procedural requirements. On October 19, 2005, Likas filed a motion to discover evidence related to an alleged conflict of interest arising from LINA's relationship with Intracorp. The District Court denied this motion as untimely and noted that LINA's relationship with Intracorp was documented in the existing Administrative Record. In denying the motion, however, the District Court indicated that it would consider any alleged conflict of interest in evaluating LINA's decision to terminate benefits.

Finally, LINA and Likas filed cross-motions for judgment on the Administrative Record; the District Court granted LINA's motion and denied Likas's motion. The District Court concluded that LINA's ruling as not arbitrary and capricous because:

1) As of October 2001, Likas was capable of fulfilling the duties of his sedentary job; 2) Two of Likas's treating physicians believed that Likas could perform sedentary work; 3) A peer review physician, Dr. Cutler, found that Likas could perform sedentary work; and 4) Likas's clinical and diagnostic tests were normal.

*Likas v. Life Insurance Company of North America,* 2007 WL 73867, at *6 (6th Cir. 2007).

Likas appealed the District Court's first ruling to this Court, challenging the District Court's 1) denial of plaintiff's motion to compel production of the Administrative Record; 2) denial of plaintiff's two motions to conduct discovery; 3) denial of plaintiff's motion to remand the case to the plan administrator; and 4) grant of judgment on the Administrative Record to the defendant. *Id.* at *1. This Court affirmed the District Court's ruling except as to the defendant's motion for judgment on the Administrative Record. *Id.* at *6. This Court concluded that it could not adequately review the District Court's decision because "the record does not indicate precisely what information Dr. Cutler reviewed in making his assessment." *Id*. This Court remanded the matter of this motion to the District Court for clarification of the materials Dr. Cutler reviewed and "for such further proceedings are appropriate." *Id.* at *7.

In response to the remand, Likas contacted Dr. Cutler's office seeking clarification of the records he considered in rendering his opinion. On April 9, 2007, Dr. Cutler's office responded that the records no longer exist, stating, "We do not keep copies of the provided records we receive for medical records review, we destroy the records once the report is generated and accepted." (J.A. 0057). On May 18, 2007, Likas requested that the district court remand the matter to LINA for further consideration, noting that Dr. Cutler could not clarify the question posed by the Sixth Circuit.

LINA opposed Likas's motion to remand and requested a status conference to determine the best method to proceed on remand from the Sixth Circuit.

On remand, the District Court concluded that it could not clarify the basis of Dr. Cutler's decision. *Likas v. Life Insurance Company of North America,* 2007 WL 4480706, at *3 (M.D. Tenn.). Rather than remand or conduct a status conference, however, the district court offered two alternative justifications for again finding LINA's decision reasonable. *Id.* at 4-5.

First, the District Court concluded that Dr. Cutler's opinion was reasonable even if he did not take into account records indicating that Likas's condition deteriorated after October 2001 because "once LINA determined that Plaintiff was not disabled under his policy in October 2001, any further deterioration of his condition was not relevant." *Id.* at 4.

Second, the District Court explained that the evidence in the Administrative Record justified concluding LINA's decision was reasonable "even in the absence of Dr. Cutler's findings one way or the other." *Id.* The District Court also indicated that it looked not to "number of physician opinions on either side of the argument, but on the substance and quality of each individual physician's assessment and findings." *Id.* at 4 n.2.

Likas timely appealed the District Court's order, seeking reinstatement of benefits, attorney's fees and costs.

### Standard of Review

Courts review denials of benefits challenged under ERISA *de novo* unless the benefit plan gives discretion to the plan administrator to determine eligibility or construe the plan terms. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 (1989). If the administrator has such authority, courts apply an arbitrary and capricious standard of review. *Kalish v. Liberty*

6

*Mutual/Liberty Life Assurance Co. of Boston,* 419 F.3d 501, 506 (6th Cir. 2005). The arbitrary and capricious standard applies to this case because the Policy gives the administrator discretionary authority; it requires an employee to provide LINA "satisfactory" proof of disability to receive benefits. *See Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

An administrator's decision is not arbitrary and capricious if the outcome may be supported by a reasoned explanation based on the evidence. *Kalish,* 419 F.3d at 506. The court will also consider any alleged conflicts of interest as part of its "arbitrary and capricious" analysis. *See Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 260 (6th Cir. 2006).

**Discussion**

**1.      Relevance of Likas's Post-October Medical Records to LINA's Determination**

The District Court concluded that neither LINA nor Dr. Cutler needed to consider Likas's post-October, 2001, medical records because LINA concluded Likas "no longer met the policy's definition of disability once LINA received the opinions of Plaintiff's treating physicians (Drs. Elalayli, Schettle, Beuter, and El-Said)." *Likas, supra,* 2007 WL 4480706 at 3.

The first question is whether LINA's opinion supports a conclusion that Likas was ineligible for LTD benefits as of the end of October, 2001.

As of October 11, 2001, the only thing holding up LINA's determination on Likas's LTD benefits was Dr. El-Said's failure to timely submit past medical records. On October 11, 2001, LINA wrote Likas requesting information from Dr. El-Said and indicating that if Dr. El-Said did not timely respond LINA would make a determination based on the information on file. (J.A. 0459). In a letter dated October 29, 2001, LINA denied benefits, explaining that it based its determination on evidence from Dr. Elalayi, Dr. Schoettle and Dr. Beuter without receiving a response from Dr. El-

7

Said. (J.A. 0449-0450). On October 30, 2001, Dr. El-Said responded to LINA by fax, indicating that he found no neurologic cause for Likas's symptoms and indicating that Likas was being treated for chronic pain. (J.A. 541). A November 5, 2001, letter from LINA stated that it was denying benefits and incorporated Dr. El-Said's evidence into its determination.

In initially denying Likas's benefits, LINA considered evidence from Likas's treating physicians, all of which was dated October, 2001, and earlier. Dr. Schoettle's October 11, 2001, Physical Ability Assessment of Likas was the most detailed and current information LINA had when it made its determination. Dr. Schoettle concluded that plaintiff was capable of "performing full time work in the sedentary-light work classification." (J.A. 534). Dr. Elalayli's reply, dated October 21, 2001, indicated that he could find "no physical limitation keeping [Likas] from work." *Id.* LINA's October 29, 2001, and November 5, 2001, letters also reference medical evidence from Dr. Beuter (dated December 26, 2000 through February 9, 2001) and the fax from Dr. El-Said.

The next question is whether Dr. Cutler was required to consider post-October, 2001, medical records to contribute meaningfully to LINA's review of its October determination. Dr. Cutler was charged with reviewing LINA's initial termination of LTD benefits. Dr. Cutler's report states that he "review[ed] the medical record provided which include the records of several treating physicians, including the previous operating physician, rheumatologists, orthopedists and other pertinent reports." (J.A. 411). Dr. Cutler's report concludes that there is "no medical documentation that supports the claimant's inability to work light duty positions after October 28, 2001," "no demonstrated condition that would preclude the claimant from working full time sedentary position as of October 28, 2001" and "no medical documentation that supports any logical condition, certainly none that would preclude the claimant from working sedentary jobs." (J.A. 411-412).

8

The parties dispute whether Dr. Cutler needed to consider all Likas's medical records or only those through October, 2001, to assess LINA's determination. LINA argues, and the District Court concluded, that the only relevant time period was through October, 2001. Likas argues that Dr. Cutler and LINA had to review all records, including those documenting Likas's health after October, 2001, to determine whether he was disabled as of October 29, 2001.

The policy terms make clear that if LINA's October disability determination was proper, Likas is not eligible for continuing LTD benefits. Disability benefits on "[t]he date [LINA] determines an Employee is not Disabled." (J.A. 0103). Any determination that plaintiff is no longer disabled, therefore, ends plaintiff's eligibility for disability insurance. Plaintiff must provide "continued proof" of his disability under the policy; LINA does not bear the burden of showing that plaintiff's eligibility has ended. (J.A. 0103). The policy also allows continuous coverage for successive periods of disability – separate periods of disability from related causes – if the employee can work more than one day but less than six months. (J.A. 0103).

Because Dr. Cutler affirmed the ineligibility determination, he did not need to review any records past October, 2001. Because plaintiff must show continuous disability and because coverage ends when a disability ends, any deterioration in health after the date coverage is denied is not relevant. It is true that Dr. Cutler was asked to evaluate Likas's ability to work light duty positions after October 28, 2001, and that to evaluate this question fully he would have to look at post-October medical records. Because Dr. Cutler concluded that Likas's disability ended before October 28, however, his response to that question, and the adequacy of evidence he reviewed in support of it, is not relevant to his review of Likas's claim.

9

Although Likas argues otherwise, the successive disability provision is not relevant here. He did not return to work for even one day after his disability insurance terminated.

The District Court correctly concluded that Dr. Cutler's opinion is valid even if he failed to consider post-October 11 evidence.

2.    **Whether Substantial Evidence Supports LINA's Determination Without Considering Dr. Cutler's Report**

The District Court held, as an alternative basis for affirming LINA's ruling, that substantial evidence supports LINA's ruling even if Dr. Cutler's opinion is discounted altogether. Applying a deferential arbitrary and capricious standard of review, a court must conclude that LINA's decision to terminate Likas's LTD benefits was "the result of a deliberate principled reasoning process" and "supported by substantial evidence." *Killian v. Healthsource Provident Admins, Inc.,* 152 F.3d 514, 520 (6th Cir. 1998).

In this case, substantial evidence for denial exists. Dr. Schoettle, one of plaintiff's treating physicians stated unequivocally that Likas could perform the duties of his current job as of October 11, 2001. Dr. Elalayli stated he saw no physical limitation preventing Likas from working. Dr. Beuter did not complete the disability section of LINA's form and Dr. Darwin did not provide medical records or information. Dr. Johnson concluded Likas could not perform sedentary work, but did not support clinical data or evidence supporting his opinion.

The District Court used language that could arguably suggest it applied a lesser standard than substantial evidence in evaluating LINA's opinion. For instance, the District Court stated that there as "*some* evidence supporting LINA's decision." *Likas*, *supra,* 2007 WL 4480706 at 4. The District Court correctly stated, however, the substantial evidence standard articulated in *Killian. Id.* There

10

is no indication, moreover, that the District Court actually applied a lesser standard – the above-described evidence constitutes substantial evidence.

### 3. Likas's Other Claims

#### A. Claims Barred By the Law of the Case Doctrine

LINA argues that several of Likas's arguments are barred by the law of the case doctrine because this Court previously decided them. The law of the case doctrine "precludes reconsideration of issues decided at an earlier stage of the case." *Caldwell v. City of Louisville,* 200 Fed. Appx. 430, 433 (6th Cir. 2006) (citation omitted) (where there has been no intervening change of law, the Court of Appeals should follow its previous determination that plaintiff had stated a claim). Litigants also may not challenge "a decision made at a previous stage of the litigation which could have been raised in a prior appeal, but was not." *United States v. Randolph,* 47 Fed. Appx. 729, 730 (6th Cir. 2002).

An appellate court may, under "exceptional circumstances" reconsider a previously decided issue: 1) "where substantially different evidence is raised on subsequent trial"; 2) "where a subsequent contrary view of the law is decided by the controlling authority"; or 3) "where a decision is clearly erroneous and would work a manifest injustice." *U.S. v. Rayborn,* 495 F.3d 328, 337 (6th Cir. 2007).

Likas argues that the Administrative Record is not complete. This Court, however, previously held that no evidence supporting Likas's request for discovery or to compel production of the Administrative Record.

Likas further argues that LINA failed to Likas's myofascial pain syndrome and that LINA wrongly required that Likas's disability be based on a known condition. Both the District Court and this Court declined to specifically address these issues because both go to the overall question of

whether LINA's decision was reasonable. The scope of this Court's remand was limited to matters related to Dr. Cutler's opinion, and so these issues are not properly the subject of this appeal.

Likas makes various challenges to LINA's communications to him throughout the administrative appeal process. This Court previously held:

> LINA 1) informed Likas fo the records on whcih it relied to deny benefits; 2) advised Likas of his right to appeal the decision; 3) provided a list of the information that Likas should submit to support his appeal; and 4) informed Likas that LINA would review any additional evidence Likas wished to submit.

*Likas, supra,* 222 Fed. Appx. at 487. LINA therefore acted appropriately in communicating with Likas and during the disability claims and appeals process. *Id.* Likas has no basis for further challenging LINA's correspondance or conduct during the appeals process.

### B.     Likas's May 2, 2008, Filing

On May 2, 2008, Likas filed a chart purporting to summarize information relating to his treating physicians contained in the administrative record. LINA argues that this document is an improper attempt to introduce new evidence not before LINA or the District Court. This Court need not determine whether the submission of the chart is proper or not, however, because it is in no way useful to the Court's evaluation. The Court declines to consider it.

### Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Likas's motion to remand.